**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

RECEIVED
in Clerk's Office

DEC 1 6 2022

U.S. District Court
Middle District of TN

DEMRY CROFT )
      Plaintiff, )
       )
v. ) CASE NO:
       )
TENNESSEE STATE UNIVERSITY ) JURY DEMAND
BOARD OF TRUSTEES )
      Defendant. )

## COMPLAINT AND JURY DEMAND

Plaintiff, Demry Croft (hereinafter referred to as "Plaintiff" or "Mr. Croft", sues the

Tennessee State University Board of Trustees ("TSU BOT") and alleges as follows:

## INTRODUCTION AND BACKGROUND

1. Mr. Croft is an African American male student-athlete who attended

college at Tennessee State University (" TSU") as a scholarship student athlete on the

TSU football team. Mr. Croft joined the team in the fall of 2018 as a starting quarterback.

On October 6, 2018, Mr. Croft was injured while playing and consequently had surgery to

his right shoulder on November 2, 2018. Mr. Croft was still in a sling and recovering from

surgery for several months following surgery. The news of Mr. Croft's injury was

prominently displayed in the news, social media and the TSU community was fully aware

of his injury.

In the fall of 2018, Mr. Croft was contacted by Jane Roe, a 19 year old freshman at TSU.

On December 1, 2018, after continued social media communications initiated by Jane

1

Roe, Jane Roe asked if she could come to Mr. Croft's room to play a video game. Jane Roe came to Mr. Croft's room where the two played the video game. During this time, Mr. Croft's roommate was in an adjoining room. After a short time, Mr. Croft drove Jane Roe to her dorm. At the time, Mr. Croft was one month post shoulder surgery and still wearing a sling, taking medication and under his doctor's supervision.

During the days following, Jane Roe continued to attempt communication with Mr. Croft. Months later, on April 1, 2019, Jane Roe reported to the TSU Office of Equity and Inclusion ("OEI") that Mr. Croft had raped her. On April 4, 2019, Jane Roe reported the incident to the TSU police department. Mr. Croft received no formal notice of these allegations from the TSU OEI until over five months later on September 5, 2019.

During the time following April 4, 2019, the TSU police began an investigation of the allegations made by Jane Roe. The investigation was conducted solely by Officer Thomas Phelps ("Officer Phelps") Mr. Croft was not immediately contacted during the investigation by the TSU police. Officer Phelps instructed the Title IX Coordinator, Danica Myers and the OEI not to contact Mr. Croft regarding the alleged incident. TSU did not notify the Nashville Metro police of the investigation and did not seek assistance from Nashville Metro police in the investigation. Danica Meyer resigned from TSU shortly after she was told not to commence an investigation.

Officer Phelps did not contact Mr. Croft until June 11, 2019. Mr. Croft was summoned to an interview set up by the Athletic Director, Theresa Phillips, under the false pretense that the meeting was regarding Mr. Croft's car that had been vandalized months earlier. When Mr. Croft arrived at the Athletic Director's office, he was unexpectedly questioned by

2

Officer Phelps about his association with Jane Roe. During the June 11, 2019 meeting, Officer Phelps did not advise Mr. Croft of his Miranda rights prior to questioning him. Officer Phelps did not mention Jane Roe's accusations of rape and did not provide Mr. Croft with a copy of Jane Roe's written statement.

On July 1, 2019, Officer Phelps arranged to meet with Mr. Croft again under the false pretense that he [Officer Phelps] would be finalizing an incident report regarding Mr. Croft's vandalized vehicle. Officer Phelps asked Mr. Croft to sign a waiver of his Miranda rights and proceeded to ask him about his vehicle and the contents that may have been stolen. After approximately five minutes of discussing the vehicle vandalism, Officer Phelps began questioning Mr. Croft about Jane Roe's allegations of nonconsensual sex. There was no copy of Jane Roe's written statement provided and Officer Phelps did not ask Mr. Croft for names of witnesses.

On August 16, 2019, Mr. Rod Reed, the TSU football coach called Mr. Croft's father, Robert Croft to inform him that his son, Mr. Croft had been indicted by a grand jury for rape. Robert Croft asked why he was never informed of an investigation of his son and was not given an explanation. Robert Croft immediately flew from Illinois to Tennessee to retain legal representation for Mr. Croft.

On August 16, 2019, the Athletic Director approached Mr. Croft on campus and handed him a letter immediately suspending him from the TSU Football program. The letter stated that the suspension was in response to the criminal charges that were made against Mr. Croft. Mr. Croft was not aware of the criminal charges and there was no additional

3

information provided in the August 16, 2019 letter. There was also no language regarding Mr. Croft's right to an appeal of the suspension. The TSU football team immediately submitted an appeal letter in support of Mr. Croft condemning the harsh sanction of the Athletic Director and asked that his removal from the team be deferred until Mr. Croft was tried in a court of law. The appeal of the entire football team was ignored by the Athletic Director.

On August 19, 2019, Mr. Croft turned himself in to the Nashville Metro Police Department and was arrested. Prior to his arrest, Mr. Croft was never contacted by the TSU Title IX Coordinator, Danica Myers or OEI and was never given an interview or hearing before the TSU police complaint was turned over to a grand jury.

On August 21, 2019, Mr. Croft attempted to register for classes for the Fall 2019 semester. However, his access to registration was denied. Mr. Croft was denied enrollment for Fall 2019 without any explanation or notice. Later that day on August 21, 2019, Mr. Croft received a letter from the Office of Student Conduct, asking that he schedule a meeting with the Assistant Dean of Student Conduct regarding an alleged violation of the TSU Student Code of Conduct. After being denied enrollment and suspended from the football program, Mr. Croft left the State of Tennessee and returned to his home in Illinois.

Mr. Croft did not receive notice of the specific charges against him until September 5, 2019. In a letter dated, September 5, 2019, the OEI Director, Razel Jones ("Mr. Jones") notified Mr. Croft that Jane Roe alleged that he engaged in non-consensual sexual contact with her on December 1, 2018, and that OEI was initiating a formal investigation

4

("the September 5, 2019 letter"). The September 5 2019 letter stated that Mr. Croft had 10 days to respond and the failure to do so would result in a hold on his academic transcript and registration. The suspension and academic hold had already preceded the September 5, 2019 letter. Furthermore, Mr. Croft had already been arrested and charged by this time. Mr. Croft had already retained counsel to defend him against the criminal charges that were reported by the TSU police.

Because of the pending criminal case in Davidson County, Mr. Croft was unable to fully respond to the OEI's request for information. Mr. Croft responded to the September 5, 2019 letter by referring Mr. Jones to his attorney. The TSU OEI Director, Mr. Jones, who was also the new Title IX Coordinator and Investigator finalized his investigative report on December 5, 2019. There was no hearing scheduled after issuance of the investigative report.

The criminal proceedings continued from August 2019 through February 7, 2022. On the trial date of February 7, 2022, Jane Roe and the TSU investigating Officer Phelps failed to appear in court. Neither of the witnesses for the prosecution appeared for the trial. The District Attorney dismissed the case against Mr. Croft. As a result of Jane Roe's allegations, the biased and improper TSU investigation and the failure to grant Mr. Croft a hearing, Mr. Croft was denied his education, his Division 1 scholarship opportunities, his opportunity to play football, incurred irreparable damage to his reputation and incurred over $100,000 in legal fees and costs.

   2. Under mounting pressure from the societal rise of the "Me Too Movement" the

5

extensive media coverage of Mr. Croft's arrest and an over zealous investigating police officer seeking to catapult his career, TSU rushed to judgment while depriving Mr. Croft of the most basic tenets of due process.

3. This case represents an egregious miscarriage of justice against Mr. Croft caused by TSU's flawed and biased investigation and improper student disciplinary process, both of which were conducted under a presumption of guilt, lack of proper notice, failure to conduct a Title IX hearing and TSU's willful ignorance of major inconsistencies and omission of information in Jane Roe's allegations of sexual contact against Mr. Croft. The investigation intentionally omitted Mr. Croft's physical condition on the date of the alleged incident. There was no mention of Mr. Croft's injury to his right shoulder (dominant arm) in any of the investigative reports or complaints. There were no interviews of witnesses for Mr. Croft and an intentionally delay of notice to Mr. Croft. Mr. Croft's reputation and football career have been irreparably damaged.

4. After a sham and one sided investigation conducted solely by one TSU police officer, who had a clear motive to make a name for himself on campus in a high profile case, Mr. Croft was denied his education, football career and his freedom. To add insult to injury, TSU placed an academic hold on Mr. Croft's transcripts and suspension of his academic account prohibiting him from transferring to any other college or university to continue his education.

5. Mr. Croft's case is an example of the injustice that has occurred as a result of colleges and universities applying a low burden of proof (" the preponderance of the evidence standard ") in sexual misconduct cases. Astonishingly, this minimal burden of proof was not met in the case against Mr. Croft's as the Nashville District

6

attorney's office did not have sufficient evidence to prosecute the case which was solely based upon the investigative report prepared by Officer Phelps.

6.  When TSU subjected Mr. Croft to disciplinary action, they did so in a way that deprived him of due process and discriminated against him because of his gender.   The University's policies and regulations as applied were biased and discriminatory and entirely insufficient to protect the rights of male students accused of sexual misconduct. To make matters worse, TSU was grossly negligent in failing to follow its own Title IX policies and the U.S. Department of Education regulations.

7.  Mr. Croft's reputation, life and future have been completely and  irreparably destroyed. Although the damage is done and Defendant's conduct cannot be undone, this lawsuit seeks redress for TSU's intentional, malicious, self serving and damaging conduct.

## **PARTIES**

8.  Plaintiff is a natural person and a resident of the State of Illinois, Winnebago County.

9.  TSU BOT is a constitutionally created public body corporate that administers the university and is responsible for ensuring that TSU's policies and programs are administered in compliance with the law and educational standards, including those established by Title IX.

## **JURISDICTION AND VENUE**

10. This court has federal question jurisdiction pursuant to 28 U.S.C. 1331 because

7

the federal law claims arise under the constitution and statutes of the United States. This court also has jurisdiction as there is diversity of citizenship pursuant to 28 U.S.C. § 1332

11. This court has personal jurisdiction over TSU BOT because TSU is an entity conducting business within the State of Tennessee and committed improper and illegal acts within this judicial district.

12. Venue is proper in this judicial district pursuant to 28 U.S. C. 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claims raised herein occurred in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

## I. TSU's actions were motivated by extensive media coverage and the need to preserve federal funding

13.       On April 4, 2011, the Office of Civil Rights ("OCR") of the United States Department of Education ("DOE') issued a guidance letter to colleges and universities in the United States in receipt of federal funding which became widely known as the "Dear Colleague Letter" (the "DCL" or 2011 Dear Colleague Letter"). The DCL advised recipients that sexual violence constitutes sexual harassment within the meaning of Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 and its regulations, and directed schools to "take immediate action to eliminate the harassment, prevent its recurrence and address its effects. " DCL at p. 4.

14.       In April 2014, the White House issued a report entitled "Not Alone". The report included a warning that if the OCR found that a Title IX violation occurred, the "school risk[ed] losing federal funds" and that the DOJ shared authority with OCR for

8

enforcing Title IX and may initiate an investigation or compliance review of schools. The report contained no recommendation with respect to ensuring that the investigation and adjudication of sexual assault complaints be fair and impartial or that any resources be provided to males accused of sexual assault.

15.     On September 1, 2014, the Chronicle of Higher Education noted that "Colleges face increasing pressure from survivors and the federal government to improve campus climate." Presumed Guilty: College men accused of rape say the scales are tipped against them,". *Chronical of Higher Education, September 1, 2014.* In the same article, the Chronicle noted that different standards were applied to men and women: "Under current interpretations of colleges" legal responsibilities, if a female student alleges sexual assault by a male student after heavy drinking, he may be suspended or expelled, even if she appeared to be a willing participant and never said no. That is because in heterosexual cases, colleges typically see the male student as the one physically able to initiate sex and therefore responsible for gaining the woman's consent." *Id.*

16.     TSU attempted to respond to the pressures of the Title IX directives and the extensive media coverage by conducting a rush to judgment approach in its investigation. However, TSU failed to conduct a proper Title IX investigation and unsuccessfully tried to correct its mistake after it suspended Mr. Croft and had him indicted by the Davidson County District Attorney's Office based upon a faulty and biased investigation.

17.     On September 22, 2017, the DOE repealed the April 2011 DCL relating to use of the "preponderance of evidence standard" and issued new guidance permitting colleges and universities to apply the "clear and convincing evidence standard". As set

9

forth below, notwithstanding the seriousness of the charges against Mr. Croft, TSU continued to apply "preponderance of evidence" standard albeit improperly.

18.    The news of Mr. Croft's arrest and the charges were prominent on social media, the local news and nationwide sports media. Consequently, TSU was pressured to sanction Mr. Croft to show support for the alleged victim.

## II. TSU failed to conduct a hearing pursuant to Title IX

19.    Jane Roe reported the alleged December 1, 2018 assault to OEI on April 1, 2019 and to TSU police on April 4, 2019.

20.    TSU police Officer Phelps conducted the entire investigation.

21.    Upon commencing the investigation, Officer Phelps instructed the TSU OEI to "hold off" on reviewing the matter until he completed his criminal investigation.

22.    Officer Phelps instructed the Title IX Coordinator, Danica Meyers, not to contact Mr. Croft regarding the alleged incident and not to take any action until he completed his criminal investigation.

23.    Title IX Coordinator, Danica Meyer resigned from TSU shortly after she was instructed not to contact Mr. Croft.

24. Jane Roe submitted a written statement with the assistance of a friend on April 24, 2019.  Jane Roe never submitted a formal Complaint.

25. TSU Police did not contact Mr. Croft until June 11, 2019 (more than 2 month later) during an interview set up by the Athletic Director, Teresa, Phillips under the false

10

pretense that the meeting was regarding Mr. Croft's car that had been vandalized months earlier on April 29, 2019.

26.    During the June 11, 2019 meeting, TSU police did not advise Demry Croft of his Miranda rights and proceeded to question him about his interaction with Jane Roe. Mr. Croft was unaware of the true purpose of the meeting when he arrived at the Athletic Director's office.

27.    On or about June 14, 2019 , Officer Phelps met with the Davidson County District Attorney .

28.    On July 1, 2019, Officer Phelps met with Mr. Croft for an interview under the pretense that Officer Phelps was seeking to finalize the report for Mr. Croft's vandalized vehicle.

29.    During the July 1, 2019 meeting, Officer Phelps asked Mr. Croft to sign an improper waiver of his Miranda rights prior to conducting an interview.

30.    After approximately five minutes into the meeting, Officer Phelps changed the questioning from the vandalized vehicle to questions regarding Jane Roe's allegations of non-consensual sex.

31.    Officer Phelps failed to interview any witnesses that may have supported Mr. Croft's denial of the incident.

32.    The TSU police investigation and Jane Roe's statement failed to mention Mr. Croft's shoulder injury even though he was in a medical sling on the date of the alleged assault and for months after surgery. Furthermore, his injury was highly publicized.

33.    Officer Phelps completed his investigative report on July 22, 2019 and turned it over to the Davidson County District Attorney and OEI.

11

34.     An indictment was issued against Mr. Croft's on August 9, 2019.

35.     On August 16, 2019, the Athletic Director issued a letter to Mr. Croft suspending him from all athletic activities for violating the Student Code of Conduct. The letter did not include details of any allegations and there were no options for appeal or recourse included as required by the TSU Student Code of Conduct and the U.S. Department of Education Regulations.

36.     On August 19, 2019, Mr. Croft turned himself in to the Nashville Metro Police, was arrested and charged.

37.     On August 21, 2019, Mr. Croft attempted to register for classes for the Fall 2019 semester and was denied registration because there was a suspension and hold on his record and registration.

38.     On August 21, 2019, after the suspensions and arrest, Mr. Croft received a letter from the Office of Student Conduct asking to schedule a meeting regarding an alleged violation of TSU's Sexual Misconduct Policy. There was no reference to Jane Roe's allegations.

39.     On September 5, 2019, Mr. Croft received the first communication from the OEI in a letter via email advising him of Jane Roe's allegations against him.  The September 5, 2019 letter informed Mr. Croft of the investigation process. This notification was received after disciplinary sanctions had been taken by TSU and after Mr. Croft had been arrested and charged for the alleged incident based upon the TSU Police Report submitted to the grand jury.

40.     On December 5, 2019, the TSU OEI finalized its Investigative Report.

12

41.     Mr. Jones, the TSU OEI Director/Title IX Coordinator/Investigator relied primarily upon the TSU police report in preparing his Investigative report.

42.     Mr. Jones served as the Title IX Coordinator,  OEI Director and Investigator simultaneously in this matter.

43.     Prior to his commencing his employment at TSU in July 2019, Mr. Jones had no experience as a Title IX Coordinator and served only one year and four months as a Title VI and EEO investigator at Middle Tennessee State University.

44. TSU is an educational institution receiving federal funding and as such is obligated to comply with Title IX of the Education Amendments of 1972 .

45. TSU's Sexual Misconduct Policy  (6.6.4) provides in pertinent part:

XI. Investigation Requirements and Procedures

A. All proceedings will include a prompt, fair and impartial investigation and result. Tennessee State University will provide the respondent and complainant equitable rights during the investigation.

B. All complaints of sexual misconduct shall be presented to the Title IX. Coordinator or designee for investigation and appropriate disposition.

C. Mediation between the complainant and respondent will never be considered an appropriate resolution in sexual misconduct cases.

D. Investigations shall be conducted in accordance with the following procedures:

> 1. Investigations under this policy shall be conducted in consultation with University Counsel in the same manner prescribed by TBR Guideline P-080.
>
> 2. Absent good cause, within one (1) business day of receipt of a report of sexual misconduct from a complainant or responsible employee, the Title IX Coordinator or designee shall attempt to get a written statement form the complainant that includes information related to the circumstances giving rise to the complaint, the dates of the alleged occurrences, and names of witnesses, if any.

13

...

7.    The Title IX Coordinator may appoint one of the Deputy Title IX Coordinators a qualified, sufficiently trained person to investigate the allegation made in the complaint.

8.    Only one person shall be identified as the investigator, though the investigator may have a second person present during the interview to take notes.

9.    Investigations shall be conducted by officials who do not have a conflict of interest or bias for or against the complainant or respondent.

      ...

11.   Once the investigator receives the complaint, the investigator shall notify the Complainant in writing of his/her rights and request a meeting.

12.   The investigator shall also notify the Respondent in writing of the complaint and his/her rights and request a meeting with the respondent.

46.   The Title IX Coordinator, Mr. Jones, did not start the investigation and did not notify Mr. Croft until September 5, 2019 (five months after notice of Jane Roe's allegations).


47.   Further, TSU's Sexual Misconduct Policy provides as follows in relevant part:

XII. Outcome of Investigation and Determination of Appropriate Action

1.  Upon completion of the investigation, the investigator shall prepare a written report that includes the allegations made by the complainant, the response of respondent, corroborating or non-corroborating statements of the witnesses, review of other evidence obtained, conclusion that may be drawn from the evidence gathered, and recommendation about the disposition of the matter.

    ...

14

4. The report shall be forwarded to the University Counsel for legal sufficiency review.

5. After the University Counsel determines the report is legally sufficient, the report shall be forwarded to the applicable Vice President for review. The Vice President, in consultation with University Counsel, is authorized to accept the findings and recommendation, modify the recommended action to be taken, remand the report for further investigation, or not uphold the findings that a policy violation has occurred.

6. The Vice President's determination shall be communicated in writing simultaneously to the Complainant and Respondent, if practicable, along with notice to the parties of their right to request an institutional hearing on the determination that a policy violation did or did not occur.

48. The OEI investigative report was completed on December 5, 2019;

49. On January 7, 2020, Frank Stevenson, Associate Vice President for Student Affairs, issued a letter to Mr. Jones accepting the findings and recommendations in the December 5, 2019 report.

50. Mr. Stevenson did not send a written notice of his acceptance of the December 5, 2019 report to Mr. Croft and did not notify Mr. Croft of his right to an institutional hearing.

XIV. Institutional Hearing

A. Either party may request an institutional hearing on the determination that a policy violation did or did not occur by providing written notice of the request to the investigator within ten (10) business days of receipt of the Vice President's decision.

...

15

C. The hearing may be held before either a hearing officer or hearing committee. The President shall determine, in his or her sole discretion, whether to proceed with a hearing officer of hearing committed an shall appoint individuals to serve in those capacities.

J. The hearing officer or chair of the hearing committee shall control the procedures of the hearing with due consideration given to the parties' requests related to procedures such as, but not limited to, limitations on cross examinations, recesses, so the parties may consult with their advisors, and scheduling of hearings.

K. The hearing officer or hearing committee shall use a preponderance of the evidence standard when reaching a decision.

L. Absent good cause, within five (5) business days of the close of evidence, the hearing officer or committee shall issue a written determination as to whether or not a violation of this policy occurred and the justification for this decision.

M. Each party shall be simultaneously notified of the hearing officer or committee's decision in writing, which shall include notice of their rights to appeal the hearing officer's of committee's determination to the President.

51.     There was no hearing scheduled after finalization of the December 5, 2019

OEI Investigative report as there was no advisory notice of a hearing option.

52.     On January 8, 2020, Mr. Jones sent Mr. Croft an email stating that he had

a right to appeal the OEI December 5, 2019 findings within 30 days. There was no notice

of or reference to a hearing contained in the January 8, 2020 email.

53.     On January 20, 2020, Mr. Croft responded and requested an appeal and

said request was confirmed as received by Mr. Jones on January 22, 2020.

54.     Mr. Jones did not respond to the request for an appeal until April 10, 2020

at which time he stated that the request for an appeal should have been sent directly to

the President of TSU. There were no such instructions given in the January 8, 2020 email.

16

55. On June 10, 2020, after not receiving any communication from Mr. Jones, Mr. Croft's attorney contacted Mr. Jones regarding the appeal status. Mr. Jones responded stating that he "would have to research the information contained in his [Mr. Jones] email and other information before responding."

56. Five months later on November 11, 2020, Mr. Jones responded to Mr. Croft's attorney via email and stated there was "confusion regarding Mr. Croft's appeal rights".

57. On November 11, 2020, Mr. Croft's attorney reiterated the request for the appeal and requested that it take place after the criminal trial so as not to jeopardize Mr. Croft's criminal defense.

58. On December 1, 2020, Mr. Jones responded stating that based upon Mr. Croft's attorney's request to schedule the hearing after the trial, that he (Mr. Jones) deemed the appeal hearing rejected and no responses to the appeals hearing requests were received.

59. Mr. Jones ended his employment at TSU on or about May 2021.

60. Mr. Croft was never granted a hearing or an appeal of any kind by TSU.

## III. Erroneous Finding

61. The OCR warned against conflicts of interest in the April 2011 Dear Colleague Letter "Title IX Coordinators should not have other job responsibilities that may create a conflict of interest…"

62. Mr. Jones, Title IX Coordinator/OEI Director/Investigator did not start the investigation until September 5, 2019.

63. The OEI report relied primarily upon the report submitted by TSU Officer Phelps.

17

64.     Officer Phelps investigation was biased and conducted under a presumption of guilt.

65.     During the investigation, Officer Phelps obtained Mr. Croft's new telephone number, gave it to Jane Roe and instructed her to contact Mr. Croft repeatedly in an effort to obtain potential evidence against Mr. Croft.

66.     The so-called controlled calls to Mr. Croft failed to produce any evidence that the alleged incident occurred.

67.     During a recorded interview with Jane Roe, Officer Phelps assured Jane Roe that " I've never lost in court" and "I'm not gonna start now". He stated further "You will not go on the stand" "You will not testify in court"

68.     A transcript of the recorded interview with Jane Roe, by Officer Phelps, revealed that Jane Roe laughed at least 37 times when describing the alleged incident.

69.     Officer Phelps did not interview any witnesses that may have supported Mr. Croft.

70.     Mr. Jones did not notify Mr. Croft or start the investigation until September 5, 2019 and after Mr. Croft had been charged and arrested.

71.     Mr. Jones issued an Investigative Report on December 5, 2019.

72.     In his investigative report, Mr. Jones concluded:

> After careful consideration of all available evidence and a review of TSU's Sexual Misconduct Policy 6.6.4, there is sufficient evidence to support a violation of the policy related to the alleged incidents involving Complainant and Respondent.
>
> In this matter, Investigator believes that it is more likely than not true that Respondent engaged Complainant in unwanted sexual contact,.....
>
> Investigator finds the Respondent's conduct to be a violation of Policy 6.6.4 and should be forwarded to appropriate personnel in Student Conduct for

18

disciplinary action and recommends that Respondent be permanently removed from Tennessee State University".

73.     Mr. Jones was well aware that Mr. Croft had been suspended from TSU, had been arrested prior to the September 5, 2019 letter, was no longer in the State of Tennessee and represented by counsel.

74.     Due to the pending criminal proceedings, Mr. Croft could not respond to Mr. Jones' request for an interview prior to issuing the December 5, 2022 finding. Mr. Jones never contacted Mr. Croft's attorneys (as requested by Mr. Croft) prior to issuing his December 5, 2019 investigative report.

75.     The timing of the investigation was biased and improper as it was required to commence within one business day of receiving the report from Jane Roe on  April 1, 2019.

76.     The OEI investigative report was based solely upon Officer Phelps report and one meeting with Jane Roe and her witnesses.

77.     The report failed to include or mention Mr. Croft's injured arm, the fact that he was wearing a sling and under his physician's/therapist's care at the time of the alleged incident.

78.     Mr. Croft's injury was well known on the campus since the injury occurred in a football game in October 2018, He had surgery in November 2018 and was out for the remainder of the football season.

79.     The report failed to mention that the entire football team supported Mr. Croft in a written appeal of his suspension.

19

80.    The report failed to mention that Mr. Croft had roommates in the adjoining room on the day of the alleged incident.

81.    Mr. Jones failed to interview any of Mr. Croft's roommates or teammates during his investigation.

82.    Jane Roe was on academic probation, had lost her financial aid and used the alleged incident to get reinstated. The report failed to mention that Jane Roe's poor academic performance preceded the alleged incident and her grades were failing in the Fall 2018 quarter.

83.    Mr. Croft never received a copy of Jane Roe's complaint or written statement prior to the investigation or the TSU sanctions against him ,.

84.    Mr. Jones could not properly apply the preponderance of evidence standard without fairly and equally obtaining  and evaluating all of the evidence from both parties or interviewing witnesses for both parties.

85.    The most egregious action is that OEI never coordinated a hearing after the issuance of his December 5, 2019 investigative report.

86.    There was never a determination issued by a hearing officer or committee as required by Title IX and TSU Sexual Misconduct Policy Section XIV.

87.    OEI erroneously skipped the entire hearing process and proceeded to an appeal after issuing his December 5, 2019 investigative report.

## III.    **Denial of Appellate Rights**

88.    The TSU Misconduct Policy provides in pertinent part:

XV.    Appeal of Hearing Decision

   A.    If either party chooses to appeal the hearing officer's/committee's decision, the party shall notify the investigator in writing of the

20

decision to appeal within five (5) business days of receipt of the hearing officer's/committee's determination.

89.     The investigative report was completed by Mr. Jones on December 5, 2019.

90.     On January 8, 2020, Mr. Jones sent Mr. Croft an email stating that he had a right to appeal the OEI findings within 30 days. There was no Notice of or reference to a hearing.

91.     The right to appeal as set forth in the January 8, 2020 letter was erroneous as there had been no hearing or determination to appeal at that time.

92.     Pursuant to TSU Guidelines, the right to appeal commences after a Written Determination has been issued by a hearing officer or hearing committee.

93.     There was no hearing in this case.

94.     Notwithstanding the erroneous notice and actions of TSU, on January 20, 2020, Mr. Croft responded and requested an appeal and said request was confirmed as received by Mr. Jones on January 22, 2020.

95.     Mr. Jones did not respond to the request until April 10, 2020 at which time he stated that the request for an appeal should have been sent directly to the President of TSU. There were no instructions in the December 5, 2019 report or any prior emails directing Mr. Croft to send any communication to the President.

96.     On June 10, 2020, after not receiving any communication, Mr. Croft's attorney contacted Mr. Jones regarding the status of the appeal.  Mr. Jones responded stating that he "would have to research the information contained in his [Mr. Jones] email and other information before responding."

21

97.    On November 11, 2020 (five months later), Mr. Jones responded to Mr. Croft's attorney via email and stated there was "confusion regarding Mr. Croft's appeal/hearing rights". On December 1, 2020, Mr. Jones summarily denied Mr. Croft an appeal.

98.    Mr. Jones responses and actions were erroneous and in violation of Title IX and TSU Guidelines.

99.    Mr. Jones left his employment at TSU shortly after denying Mr. Croft's appeal on or about May 2021.

100.    Mr. Croft was never granted a hearing or an appeal.

101.    The sequence of "confusing" communications following the December 5, 2019 letter, extended delays in responding, failure to schedule a hearing by TSU was a monumental failure to follow the 6.6.4 Policy.

102    Mr. Jones denial of Mr. Croft's request for an appeal disregarded the due process rights of a male student and misapplied the TSU Title IX Guidelines.

103.    TSU's polices and procedures, as misapplied by TSU personnel denied Plaintiff his right to a fair and impartial process.

## IV.    Interim suspension without opportunity to challenge

104.    Part 4r of the TSU Code of Student Conduct provides …In any case of interim suspension, the student of student organization, shall be given an opportunity at the time of decision, or soon thereafter as reasonably possible, to contest the suspension.

105.    The August 16, 2019 letter from the Athletic Director failed to include any notice of an opportunity to challenge the suspension and Plaintiff never received a subsequent opportunity to do so.

22

## V. Jane Roe, TSU and Witnesses failed to appear for trial

106. An indictment was entered against Mr. Croft on August 9, 2019.

107. All information contained in the indictment was prepared by the TSU Police

conducted solely by Officer Phelps.

108. The TSU Sexual Misconduct Guidelines 6.6.4. Section VII. Paragraph D.

provides:

Reporting Pursuant to the Nottingham Act

1. Unless the victim of a rape does not consent to the reporting of an offense, the chief security officer of chief law enforcement office for institution shall immediately notify the local law enforcement agency with territorial jurisdiction over the institution if the officer is in receipt of a report from the victim alleging that any degree of rape has occurred on the property of the institution. The chief security officer or chief law enforcement officer shall designate one (1) or more persons who shall have the authority and duty to notify the appropriate law enforcement agency in the absence of the chief security officer or chief law enforcement officer. In the case of an alleged rape, the institution's law enforcement agency shall lead the investigation. After notifying the local law enforcement agency, the institution shall cooperate in every respect with the investigation conducted by the law enforcement agency. T.C.A.§49-7-129

109. The TSU police did not notify Nashville Metro of the alleged rape as required

by the Tennessee State Code and the TBR guidelines.

110. The Nashville Metro Police did not participate in any part of the

investigation.

111. The entire criminal investigation was conducted solely by Officer Phelps.

112. Given the seriousness of the charges, Officer Phelps should have notified

and turned the investigation over to Nashville Metro for a proper investigation.

23

113.  During a recorded interview with Jane Roe, Officer Phelps assured Jane Roe that " I've never lost in court" and "I'm not gonna start now".  He stated further "You will not go on the stand" "You will not testify in court"

114.  A transcript of the recorded interview with Jane Roe by, TSU officer Phelps, revealed that Jane Roe laughed at least 37 times when describing the incident.

115.  Jane Roe's behavior during the recorded interview clearly demonstrated her indifference towards a very serious allegation.

116.  The transcript of the recorded interview of Jane Roe conducted by Officer Phelps clearly shows Officer Phelps leading Jane Roe in her statements and his biased disposition toward Mr. Croft.

117.  Officer Phelps and Jane Roe never intended to attend the trial as the charges against Mr. Croft were frivolous.

118.  The report submitted by Officer Phelps to the DA omitted any reference to Mr. Croft's injured right shoulder at the time of the alleged assault.

119.  Officer Phelps lead an improper and bias investigation in an effort to be involved in a high profile case on campus.

120.  Mr. Croft was forced to retain the services of criminal defense attorneys over the course of August 19, 2019 through February 2022 to defend him against Jane Roe's allegations.

121.  TSU Officer Phelps, a key witness for the prosecution was ordered to appear at a pretrial hearing in January 2022.

122.  TSU Officer Phelps failed to appear at the pretrial hearing.

123.  The trial was set for February 7, 2022 in April of 2021.

24

124.    On the trial date, Demry Croft, his family, his witnesses and counsel were present in court and prepared for trial.

125.    On February 7, 2022, the DA advised the court that none of the prosecution's witnesses were appearing, including Jane Roe.

126.    Jane Roe, Officer Phelps, TSU and all other prosecution's witnesses failed to appear in court for the trial.

127.    On February 7, 2022, the case against Mr. Croft was dismissed.

128.    The information used for the indictment against Mr. Croft was prepared solely by Officer Phelps.

129.    Officer Phelps failed to appear as he knew the information contained in his report was incomplete, biased and insufficient to obtain a conviction.

130.    The information submitted by Officer Phelps to the grand jury was biased and malicious.

131.    Jane Roe failed to appear in court as she knew that her allegations were false.

132.    Notwithstanding the DA's dismissal, TSU's actions had already damaged Plaintiff, who was unable to obtain another Division1 scholarship or continue his education.

133.    TSU's actions also have severely and irreparably damaged Plaintiff's reputation.

134.    Mr. Croft incurred legal fees in excess of $105,000, court costs and travel related expenses in connection with the criminal defense.

25

135.    All conditions precedent to the bringing and maintenance of this action , and the granting or relief requested, have occurred, have been performed or waived.

## COUNT I
### Violation of Title IX of the Education Amendments of 1972

136.    Plaintiff re-alleges paragraphs 1 - 135

137.    Title IX of the Education Amendments of 1972 provides, in relevant part, that:

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

138.    Title IX of the Education Amendments of 1972 applies to all public and private educational institutions that receive federal funding, which includes Defendants.

139.    Students attending public universities such as TSU who have been accused of sexual misconduct, have a right to due process under Title IX. See U.S. Dep't of Education, Office for Civil Right, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties_Title IX* (2001) at 22 (the "2001 OCR Guidance"); April 2011 Dear Colleague Letter at 12.

140.    Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student …complaints alleging any action which would be prohibited by "Title IX or regulations thereunder.  34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of

26

Justice) (*emphasis added*.) Such prohibited actions include all forms of sexual harassment, including sexual intercourse, sexual assault, and rape. [1]

141. The "prompt and equitable" procedures that a school must implement include, at a minimum:

   i.     "Notice . . . of the procedure, including where complaints may be filed":

   ii.    "Application of the procedure to complaints alleging [sexual] harassment…";

   iii.   "Adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence";

   iv.    "Designated and reasonably prompt timeframes for the major stages of the complaint process"; and

   v.     "Notice to the parties of the outcome of the complaint"[2]

142. In this case, Mr. Jones served as the OEI Director, the Title IX Coordinator and the Investigator and there were no independent decision makers appointed.

143. Serving in the aforementioned three roles simultaneously throughout an important and highly sensitive process was a clear conflict of interest and as such it was not possible for Mr. Jones to perform an unbiased and fair investigation.

144. Mr. Jones as the Investigator used the TSU police report in conducting his investigation and was well aware that the Officer Phelps had previously turned over said information to the grand jury for an indictment prior to the start of his investigation .

---

[1] *See generally* U.S. Dep't of Education, Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, of Third Parties—Title IX* (2001) at 19-20, 21 & nn. 98-101.
[2] *Id*. At 20.

145. Mr. Jones acted on a presumption of guilt and not a presumption of innocence given his use and knowledge of the TSU police report, the indictment and arrest.

146. As the OEI Director and Title IX Coordinator, Mr. Jones was under pressure to take action to sanction Plaintiff in order to support the earlier TSU disciplinary actions taken against Plaintiff and the indictment based upon the TSU police investigation.

147. The OCR has reported that a typical investigation takes up to 60 calendar days following the receipt of the complaint. DCL at 12. TSU's Sexual Misconduct Policy also provides:

> XIII. Timeframe for Conducting the Investigation
>
> 1.      Every reasonable effort shall be made to conclude the investigation and resolve the complaint within sixty (60) calendar days following receipt of the complaint. Within this sixty day timeframe, absent good cause, it is expected that the investigator will conclude the investigation, that the investigator will present a report to the Vice President, and that the investigator will notify the parties in writing of the Vice President's determination.
>
> 2.      If the investigator determines that the additional time is needed, both parties shall be notified in writing of the delay, the anticipated date that the investigation will be concluded, and the reasons for such delay.

148. The TSU OEI did not provide Mr. Croft with Notice of the Investigation until five months after Jane Roe reported the alleged incident on September 5, 2019.

149. TSU intentionally withheld commencement of any Title IX investigation until well after the TSU police worked to obtain an indictment of Mr. Croft.

150. OEI failed to provide Plaintiff with a copy of Jane Roe's Complaint/Statement as required.

151.    Mr. Croft did not receive a copy of Jane Roe's handwritten statement until after the commencement of discovery in the criminal proceedings.

152.    Upon receipt of Jane Roe's allegations on April 1, 2019, OEI failed to provide Mr. Croft with the required Notice of Allegations as set forth above in the TSU Sexual Misconduct Policy 6.6 4. Section XI D 12.

153.    OEI did not commence its investigation until September 5, 2019.

154.    TSU's failure to immediately commence the investigation and notify Mr. Croft violated the Notice Provisions of Title IX and it's own Sexual Misconduct Policies.

155.    OEI did not provide Notice to Plaintiff until September 5, 2019, well after Plaintiff had been arrested and charged.

156.    TSU's intentional delay in commencing the investigation and notifying Mr. Croft severely hampered Mr. Croft's ability to gather evidence and witnesses to defend himself against the allegations. The improper delay impeded his access to education and created a hostile environment toward him as a male student.

157.    TSU finalized its investigative report on December 5, 2019.

158.    Pursuant to the TSU's Sexual Misconduct Policy, a hearing should be held after the Investigative Report is finalized and submitted to the parties.

159.    TSU did not notify Mr. Croft that he was entitled to a hearing and thus no hearing was granted.

160.    There was no Determination issued by a hearing committee which would have consisted of individuals not serving as the Title IX Coordinator, OEI Director or Investigator.

29

161. TSU violated the Title IX statute as it did not grant Plaintiff a due process during and after issuing its investigative report.

162. TSU further violated Title IX by denying Mr. Croft the right to an appeal.

163. Based on the foregoing, TSU failed to conduct an adequate, reliable and impartial investigation of Jane Roe's complaint.

164. Title IX may be violated by a school's imposition of university discipline where gender is a motivating factor in the decision to discipline.

165. TSU's failure to conduct a fair and impartial investigation and hearing was clearly motivated by Plaintiff's gender.

166. An "erroneous outcome" occurred in this case, as Plaintiff was innocent and wrongfully found to have committed a violation of TSU's policies with gender bias as a motivating factor.

167. TSU denied Plaintiff's right to due process by: i) not notifying Plaintiff of the complaint until several months after TSU was made aware of said complaint; ii) not commencing the investigation until five months after the notice of the allegations by Jane Roe; iii) denying Plaintiff the right to a hearing prior to sanctioning Plaintiff; iv) denying Plaintiff the right to ask questions of Jane Roe or witnesses to the case, to test credibility or for the purposes of cross-examination; v) not including Plaintiff in the investigation and issuing the finding despite clear and obvious bias against Plaintiff; vi) failing to give Plaintiff adequate time to review the investigative file vii) denying Plaintiff the right to appeal.

30

168.   The circumstances herein strongly suggest that gender bias was a motivating factor behind the erroneous findings and the decision to impose an unjustly severe penalty upon Plaintiff.  These circumstances include, but are not limited to:

i)      The TSU police officer conducted a biased investigation and ignored obvious evidence that would contradict Jane Roe's allegations;

ii)     TSU intentionally delayed commencement of the OEI investigation and notification to Plaintiff of the allegations until the TSU police completed and turned its report over to the grand jury for an indictment;

iii)    Beginning in 2011 and through the time when Jane Roe's complaint was investigated by TSU police, universities were subject to immense federal, local and campus pressure to protect female victims of sexual assault, adopt a trauma-informed approach to investigating sexual misconduct complaints; and issue more severe sanctions to those charged with sexual misconduct;

iv)    TSU police did not interview any witnesses in support of Mr. Croft.

v)     The TSU police improperly interviewed and obtained information from Mr. Croft;

vi)    The TSU police did not notify or involve Nashville Metro Police;

vii)   The indictment against Mr. Croft was solely based upon the TSU police investigation and report;

viii)  The TSU police officer promised Jane Roe that she would never go to court or be questioned by any other law officer or attorney;

31

ix)    Mr. Croft was a quarterback for the TSU football team and the arrest was highly publicized in the media and TSU made sure he was severely punished in the eyes of the public and media ;

x)    Mr. Jones served in the capacity of Title IX Coordinator, OEI Director and Investigator simultaneously in a rush to judgement investigation and finding in order to support the harsh sanctions and criminal charges already placed against Mr. Croft;

xi)    Mr. Jones had no experience as a Title IX Coordinator prior to investigation this case and was focused on protecting Jane Roe as opposed to ensuring a fair and unbiased investigation where Plaintiff is assumed innocent until proven otherwise;

xii)    TSU never notified Mr. Croft that he was entitled to a hearing after issuance of the investigative finding;

xii)    TSU never provided Mr. Croft with a hearing or an appeal;

xiv)    Plaintiff was suspended from the university, his Division 1 Athletic Scholarship was stripped away, and a suspension was placed on his transcript prior to the completion of the investigation and there was no opportunity to challenge the suspension;

xv)    Plaintiff was arrested and charged with felonies and his entire career has been irreparably damaged based solely upon a report by TSU police.

169.    The above- referenced allegations demonstrate that TSU intentionally discriminated against Plaintiff on the basis of gender.  The University's decision to suspend and expel Plaintiff from school was motivated by gender as they clearly allowed the accuser to participate in the investigation and Plaintiff was not allowed to granted a hearing. Plaintiff did not receive notice pursuant to TSU's policies or the Title IX

32

regulations. Plaintiff's gender was a determining factor in the outcome of the sham investigation and lack of a hearing.

170. The above-referenced allegations demonstrate that the University reached an erroneous outcome against Plaintiff due to their gender discrimination and bias toward Plaintiff.

171. The above referenced allegations demonstrate TSU's deliberate indifference in their gender discrimination towards Plaintiff because their conduct was clearly unreasonable and egregious in light of the circumstances.

172. Upon information and belief, the University's mishandling of Jane Roe's allegations was motivated by an over zealous TSU police officer, the publicity and media exposure surrounding the arrest, external pressure from the United States Department of Education and fear of losing federal funds.

173. Based on the foregoing, Plaintiff was subjected to a biased, prejudiced and unfair process in violation of Title IX designed to find him, the male, responsible for sexual misconduct and punished severely for it.

174. TSU's failure to commence the investigation timely was clearly intentional.

175. Had TSU followed its own Sexual Misconduct Policy, the process could have been fairly and impartially resolved before the criminal indictment and before university sanctions.

176. As a direct and proximate result of the above conduct, Plaintiff sustained damages in an amount to be proven at trial, but in any event, in excess of $75,000, including, without limitation, emotional distress, mental anguish, loss of educational and

33

career opportunities, reputational damages, economic injuries, attorney's fees and other direct and consequential damages.

177. As a direct result of Defendant's violation of Title IX regulations and its own policies, which resulted in unduly severe and unwarranted sanctions which continue to injure Plaintiff's reputation and right to continue his education, an injunction should issue directing Defendant to (i) reverse the outcome and findings regarding Jane Roe's complaint; (ii) expunge Plaintiff's disciplinary record; (iii) remove any record of Plaintiff's suspension from his education file; (iv) permanently destroy any record of Jane Roe's complaint; (v) issue an apology to Plaintiff.

178. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, including punitive damages, plus prejudgment interest, attorney's fees incurred in the criminal defense trial and in this matter, expenses, costs and disbursements.

WHEREFORE, for the following reasons, Plaintiff demands judgment against the TSU BOT as follows: a judgment awarding Plaintiff damages in an amount to be determined at trial including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of education opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements. Plaintiff further requests an injunction against TSU as a result of TSU's violation of Title IX, which resulted in an unduly severe and unwarranted sanction which continues to injure Plaintiff's reputation and right to continue his education, an injunction should issue directing the TSU BOT to:

       a. reverse the outcome and findings regarding Jane Roe's complaint;

34

b. expunge Plaintiff's disciplinary record;

c. remove any record of Plaintiff's suspension from his education file;

d. permanently destroy any record of Jane Roe's complaint;

## COUNT II
## Gross Negligence -

179. Plaintiff re-alleges paragraphs 1 through 178.

180. The Elements to state a claim for Gross Negligence are:

    1)     The Defendant owes a duty to the Plaintiff

    2)      The Defendant has breached it's duty to the Plaintiff

    3)     The Defendant's breach of duty caused injury to the Plaintiff

    4)     The Defendant's action or inaction was the proximate cause of the Plaintiff's injury.

    5)     The Plaintiff suffered actual damages as a result of Defendant's action.

A negligent action becomes grossly negligent if the Defendant was aware of the potential consequences of it's action or omission and the Defendant recklessly chose to ignore the consequences of its actions.

181. The TSU Code of Student Conduct at Part 5 - Procedures and Guidelines for the Enforcement of Student Discipline reads in relevant part:

1. A university has the responsibility and obligation to its students, faculty, and community to maintain an academic environment that promotes intellectual pursuits and harmonious interpersonal relationships between its various publics and constituents. Toward this end, TSU has established and published a uniform Code of Conduct, which spells out and informs students at the university the parameters of appropriate student conduct.

35

2. The following is a description of the procedures by which the university enforces its standards of student conduct.

3. Inherent in these procedures is the university's recognition of its obligation to protect the rights and privileges of its students in accordance with the guarantees afforded all citizens under the Constitution of the United States and due process as interpreted by appropriate judicial authority.

4. The maintenance of order and the enforcement of the rules and policies of The university and the Tennessee Board of Regents are vested with the president of the university or his/her designee. This responsibility is delegated to the Vice President for Student Affairs who in turn delegates this authority to the Dean of Students/Chief Judicial Officer and the faculty and students appointed to participate in the administration of these procedures.

5. The university believes that the disciplinary procedures described will serve the interests of students in obtaining full and fair hearings

182.    Based upon the above policies set forth in the TSU Student Code of

Conduct, it is clear that TSU owed Plaintiff a duty to protect his right to due process and

to provide him with a full and fair hearing.

183.    TSU had a duty to commence a timely investigation immediately following

Jane Roe's notice to OEI and the TSU police.

184.    TSU failed to timely notify Plaintiff of the allegations against him.

185.    TSU had a duty to notify the Nashville Metro Police of the alleged incident

so that they could conduct a proper investigation.

186.    TSU had a duty to ensure that TSU Police conducted a fair and unbiased

investigation and followed the university policies for notification to Plaintiff and local law

authorities.

187.    TSU failed to notify Plaintiff of a right to a hearing.

188.    TSU breached it's duty to protect Plaintiff's rights to due process by failing to provide him with a full and fair hearing.

189.    As a result of TSU's breach of duty to Plaintiff, he suffered irreparable injury to his education, reputation, the loss of his Division 1 scholarship, emotional distress, legal defense fees, and costs.

190.    TSU was fully aware of it's duty to provide Plaintiff with his due process rights, the right to timely and proper notice and the right to a proper hearing.

191.    TSU was well aware that its actions and omissions would result in irreparable and devastating injury to Plaintiff .

192.    Had TSU conducted a proper, fair, impartial and timely investigation and hearing, Plaintiff would have had an opportunity to properly defend himself against Jane Roe's allegations.

193.    In its rush to punish Plaintiff, TSU sanctioned Plaintiff, turned over a biased and incomplete report to the grand jury resulting in the indictment and arrest of Plaintiff.

194.    Had TSU turned the investigation over to Nashville Metro Police, a proper investigation would have found that Jane Roe's allegations and the evidence did not support an indictment.

195.    TSU, it's witnesses and Jane Roe failed to appear at the February 7, 2022 trial to support the allegations against Plaintiff.

196.    TSU recklessly disregarded it's own policies and the Title IX policies.

197.    TSU's actions were reckless and malicious resulting in devasting consequences and damages to Plaintiff.

198.   As a direct and proximate result of the above-referenced actions of Defendant, Plaintiff has been substantially damaged in an amount to be proven at trial, but in any event, in excess of $75,000 based upon the following: mental anguish, emotional distress, injury to reputation, past and future, economic loss, deprivation of due process, loss of educational and athletic opportunities, and loss of future career prospects and/or earnings.

199.   As a direct and proximate result of Defendant's gross negligence, Plaintiff is entitled to compensatory and punitive damages.

WHEREFORE, for the following reasons, Plaintiff demands judgment against TSU BOT as follows:  a judgment awarding Plaintiff damages in an amount to be determined at trial, including without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational opportunities,  loss of future career prospects, plus prejudgment interest, attorney's fees, expenses, costs, disbursements and punitive damages.

## JURY DEMAND

Plaintiff herein demands a trial by jury of all triable issues in the present matter.

Dated:  ___/2/14/_____, 2022

Respectfully Submitted,

Demry B. Croft
921 Night Owl Lane
Roscoe, IL 61073
demrycroft@gmail.com
608-481-3379

38

CRDFT
921 NIGHT OWL LANE
ROSCOE, IL 61073

U.S. District Court
719 Church Street
Nashville, TN 37203
Attn Clerk of Court